UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩

**DOUGLAS R. McCARROLL**

                              **Plaintiff,**

            **-V-**                                              **9:09-CV-187**
                                                                 **(NAM/DRH)**

**DENNIS RYAN, DHO; STEVEN LUCAS, CASE**
**MANAGER; MICHELLE GONYEA, CASE**
**MANAGER; JOHN FEHLNER, UNIT MANAGER;**
**DEBORAH G. SCHULT, Ph.D., WARDEN;**
**CRYSTAL KINDALL, TDAT MANAGER; MARC**
**A. RINDA, DHO; sued in their individual capacities**
**as employee of the U.S. Federal Bureau of Prisons;**
**ELAINE COHEN, Director, sued individually as the**
**Director of Watkinson Halfway House; U.S. Federal**
**Bureau of Prisons,**

                              **Defendants.**

☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩☩

APPEARANCES:                               OF COUNSEL:

Douglas R. McCarroll
c/o Law Offices of Bruce Corrigan Jr.
1853 Post Road East
Westport, Connecticut 06880
*Plaintiff Pro Se*

Richard Hartunian                          Charles E. Roberts, Esq.
United States Attorney                     Assistant U.S. Attorney
Northern District of New York
100 South Clinton Street
Syracuse, New York 13261
*Attorneys for Defendants Ryan, Lucas, Gonyea, Schult,*
*Kindall, Rinda and U.S. Federal Bureau of Prisons*

Damon, Morey Law Firm                      Hedwig M. Auletta, Esq.
200 Delaware Avenue
12th Floor
Buffalo, New York 14202-2150
*Attorneys for Defendant Elaine Cohen*

**Hon. Norman A. Mordue, Chief U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**INTRODUCTION**

On February 13, 2009, plaintiff commenced this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 and *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (allowing claims for damages by those alleged to be the victims of constitutional violations committed by federal employees) alleging that defendants violated his Fifth Amendment rights to due process.  (Dkt. No. 1).

Presently before the Court are two motions.  On April 27, 2009, defendant Cohen moved for dismissal of plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(2).  (Dkt. No. 15).  Plaintiff has not opposed that motion.  On July 6, 2009, defendants Ryan, Lucas, Gonyea, Fehlner, Schult, Kindall, Renda[1] and U.S. Federal Bureau of Prisons moved for summary judgment pursuant to Fed. R. Civ. P. 56(b).  (Dkt. No. 19).  Plaintiff opposes the motion. (Dkt. No. 29).

## FACTUAL BACKGROUND

The facts in this case, unless otherwise noted, are undisputed.[2]  On August 22, 1996, plaintiff was found guilty of: (1) Conspiracy to Manufacture More than 100 Marijuana Plants, in violation of 21 U.S.C. § 846; (2) Manufacturing More than 100 Marijuana Plants, in violation of 21 U.S.C. §§ 841(a)(1) and 846; (3) Possession with Intent to Distribute More than 100 Marijuana Plants, in violation of 21 U.S.C. § 841(a)(1); and (4) Use of a Firearm in Relationship to a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1).  Plaintiff was sentenced to

---

[1] In the caption, defendants name is spelled "Rinda".  Throughout defendants motion papers, the name is spelled "Renda".

[2] The facts set forth in this section are taken from: (1) the complaint; (2) Defendants' Statements of Material Facts; (3) Plaintiff's Response to Defendants' Statement of Material Facts; (4) the exhibits and evidence submitted by defendants in support of their motions for summary judgment; (5) the exhibits and evidence submitted by plaintiff in opposition to defendants' motion for summary judgment.  Moreover, plaintiff has not disputed any of the facts asserted by defendant Cohen in her motion to dismiss.  To the extent that the facts are supported by the record, they will be accepted as true and accurate for the purposes of defendant's motion to dismiss.  *See Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F. 3d 241, 244 (2d Cir. 2004). The facts, as discussed herein, are for the relevant time period as referenced in the complaint.

four concurrent, ten-year terms of imprisonment on the drug-related charges to be followed by a consecutive, five-year term of imprisonment on the firearm charge.  On November 25, 1996, plaintiff pleaded nolo contendere to one count of Felon in Possession of a Firearm which had been Shipped in Interstate Commerce in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) and was sentenced to a 188-month term of imprisonment to run concurrently with his previously imposed sentence.

During his incarceration at FCI Ray Brook, plaintiff was referred for placement at a Residential Reentry Center ("RRC").[3]  As part of the referral process, on May 21, 2008, plaintiff signed an "Agreement to Participate in Community Transition Programming" (Form 5330.10).

On June 4, 2008, plaintiff was transferred to Watkinson House in Hartford, Connecticut. Defendant Cohen is Program Director of Watkinson House, a halfway house for inmates who are nearing the completion of their term in the prison system.  The Watkinson House is supervised by the Bureau of Prisons office in Philadelphia, Pennsylvania.  Cohen resides in Connecticut and performs her duties as Program Director at the facility.  Cohen has never traveled to New York State in the performance of her duties.    Upon arriving at Watkinson House, plaintiff received a notice from defendant Crystal Kindall, the Transitional Drug Abuse Treatment ("TDAT") Coordinator, directing plaintiff to attend his first treatment session with the Community Renewal Team ("CRT").  The notice, dated May 30, 2008, directed plaintiff to attend his first treatment session within 10 days of arriving at the halfway house.

On June 10, 2008 at 9:02 p.m., plaintiff received an Incident Report from a Watkinson House staff member.  According to the Incident Report:

---

[3] The record does not include any information with regard to where plaintiff was confined between 1996 and 2008. Moreover, the record does not indicate how or who referred plaintiff for placement at a RRC or when that determination was made.

3

On June 10, 2008 at approximately 5:15 p.m. writer received a phone call from Marvin Douglas from CRT/TDAT program. Marvin Douglas informed writer that Mr. McCarroll rejected treatment and he was being sent back to the facility. At approximately 5:34 p.m. writer received an Infraction Notice by fax from Marvin Douglas. The Infraction Notice was to inform staff that Mr. McCarroll was resistant to treatment.[4]

Douglas McCarroll is in violation of Code 309 - Violating a Condition of a Community Program.

The Infraction Notice included a copy of the TDAT Sign In Sheet for June 10, 2008. Plaintiff wrote on the sign-in sheet, "signed under objection, duress & coersion [sic] and the threat of being put back in prison see - UCC 1-207".[5]

After an investigation, the Incident Report was referred to the Center Discipline Committee ("CDC") for a hearing.[6]  On June 11, 2008, plaintiff was provided with a copy of Inmate Rights at Center Discipline Committee Hearings. Plaintiff acknowledged that he was advised of his rights and further, that he had an opportunity to request a staff representative and witnesses. Plaintiff asked Elaine Cohen to act as his staff representative and she agreed. Plaintiff also requested three witnesses. According to the record, the hearing was scheduled for June 13, 2008 at 12 p.m. at the Watkinson House.

On June 13, 2008, Kindall wrote a letter to plaintiff advising that he was a "TDAT failure and should remain in secure custody until released from the Bureau of Prisons". Defendants counsel claims that, "the Bureau determined [plaintiff] should return to secure custody until his

---

[4] The "writer" was Melissa Arnold, a Counselor Supervisor, who is not a defendant in this action.

[5] The Infraction Notice is not signed or dated but plaintiff does not dispute that he executed the "sign in sheet" and admits to the statements contained therein.

[6] The record includes a copy of an Investigation Report dated June 11, 2008 prepared by Elizabeth Hersey, Human Service Worker. In the report, Ms. Hersey stated, "recommend CDC Hearing". The record does not contain an affidavit from Ms. Hersey authenticating this report. However, plaintiff admits that the matter was referred for a hearing.

release", and was picked up by the U.S. Marshal's service to"effectuate his return to secure custody". The record does not contain any information with regard to plaintiff's removal from the halfway house. However, plaintiff alleges that he was removed from the Watkinson Halfway House on June 16, 2008 and held for 37 days in Weston Street County Jail in Hartford, Connecticut. Plaintiff further claims that the jail was in the same town as the halfway house.[7]

On June 13, 2008, the CDC hearing was held in plaintiff's absence.[8] The CDC determined that plaintiff violated Disciplinary Code 309 - a condition of his community program.[9] As plaintiff was previously classified as a violent offender, the matter was referred to the Disciplinary Hearing Officer ("DHO") for imposition of sanctions.

On June 25, 2008, DHO Renda upheld the CDC finding that plaintiff violated Disciplinary Code 309. DHO Renda sanctioned plaintiff to a disallowance of eight days of good conduct time, limited plaintiff's commissary privileges for three months, limited plaintiff's telephone privileges for two months and recommended a disciplinary transfer from the RRC to secure custody. DHO Renda also referred the matter for an in-person hearing to be held upon plaintiff's arrival at FCI Ray Brook.

On September 25, 2008, plaintiff arrived at FCI Ray Brook. On October 9, 2008, an Incident Report was prepared by defendant Lucas, a case manager at Ray Brook. The Incident Report stated, "See attached incident report - This is created to conduct an In-Person Hearing for inmate McCarroll for Violating Condition of a Community Program, wherein the inmate

---

[7] Plaintiff further states that on July 22, 2008 he was transported to Wyatt Detention Center in Rhode Island. From July 25, 2008 until September 22, 2008, plaintiff claims he was held in the Metropolitan Detention Center in Brooklyn, New York. Defendants provide no evidence or testimony with regard to where plaintiff was located from the time he was removed from the halfway house until the time he arrived at FCI Ray Brook.

[8] Defendants contend that the hearing actually occurred on June 16, 2008.

[9] Disciplinary Code 309 is part of the Prohibited Acts and Disciplinary Severity Scale included in the Statement of Work for Residential Reentry Center.

rejected/resisted treatment and walked out of the community facility".  On October 9, 2008, plaintiff received a copy of the Incident Report.  Plaintiff claimed that he did not resist treatment and claimed that Dr. Douglas asked him to leave and then walked plaintiff out of the office.  The matter was referred to the Unit Disciplinary Committee ("UDC").

On October 10, 2008, the UDC consisting of UDC Chairperson, defendant John Fehlner, and UDC member, defendant Michelle Gonyea, received the Incident Report and Investigation. The UDC recommended that plaintiff lose eight days of good conduct time, three months of commissary and two months of telephone privileges, in addition to a disciplinary transfer.  The committee referred the matter to a DHO for a further hearing.

On October 10, 2008, plaintiff was provided with a copy of the Inmate Rights at Discipline Hearings and acknowledged that he was advised of the rights afforded to him during the hearing before the DHO.  Plaintiff requested Correctional Counsel Sepanek as his Staff Representative and she agreed.  Plaintiff also requested three witnesses: (1) Case Manager Steven Lucas; (2) James Peyton, from Atlantic Psychological Associates; and (3) Associate Warden Porter.

On November 18, 2008, DHO Ryan held a rehearing on the Incident Report.  Plaintiff denied violating Code 309 and submitted a written statement with exhibits in support of his defense.  Plaintiff argued that the Incident Report was not proper because he did not initial the individual requirements of the Agreement to Participate in Community Treatment Programs (Form 5330.10) and therefore, the contract was void.  DHO Ryan acknowledged that plaintiff requested witnesses but DHO Ryan declined to call the witnesses deeming them "unnecessary". DHO Ryan concluded that plaintiff violated Code 309 and as a sanction, disallowed eight days of plaintiff's good conduct time and recommended a disciplinary transfer.

On December 5, 2008, plaintiff was released from FCI Ray Brook via a good conduct time release.

## COMPLAINT

Plaintiff alleges that defendants violated his Fifth Amendment right to due process. Specifically, plaintiff alleges as follows:

- "defendant U.S. Federal Bureau of Prisons . . . pull[ed] plaintiff off the bus twice to prevent him from returning to FCI Ray Brook sooner and have the Appeal process in a timely manner was malicious."

- "Kindall caus[ed] the plaintiff to not have a fair DHO hearing."

- " [defendants] add[ed] fraudulent words and alter[ed] government documents, corruptly obstruct[ed] and imped[ed] the proper administration of the law . . . refus[ed] to strike the fraudulent language . . . "[d]efendants Lucas, Gonyea, Ryan, Fehlner and Schult and other coconspirators . . . had the duty to prevent one another from committing . . . unlawful acts."

- "the unlawful act of defendant Rinda holding a DHO hearing in absentia when plaintiff did not escape or otherwise was absent from federal custody was in conspiracy with defendants and against the law."

- "the acts of defendant Ryan violating the law and refusing to give the plaintiff's staff rep. copies of the investigation and other relevant materials, refusing to submit written requests to three witnesses outside the institution . . . and refusing to allow the plaintiff to call witnesses and get written statements from witnesses . . . and purposely delaying the DHO hearing until November 18, 2008 in order to

cheat plaintiff out of his appeal rights in a timely manner was self-serving and maliciously made."

- "the acts of defendant Elaine Cohen preventing a UDC hearing in a timely manner in conspiracy with the defendant BOP and the unlawful policies and practices of guilty until proven innocent and defendant Crystal Kindall's acts of having U.S. Marshals come to the Watkinson House . . . and cart him off to jail without a hearing violated the Fifth Amendment."

- "the omission of defendant Schult to see that the DHO hearing and process was in conformity with the Rules was an abuse of power and unlawful and in conspiracy with other named defendants and those not named . . ."

*See* Plaintiff's Complaint (Dkt. No. 1), ¶ 59-65.

As a result, plaintiff alleges that he suffered from psychological distress and seeks $180,000.00 in compensatory damages and $180,000.00 in punitive damages.

## DISCUSSION

## I.    DEFENDANT COHEN'S MOTION TO DISMISS

Defendant moves for dismissal of plaintiff's complaint arguing that plaintiff fails to state a cause of action and lacks personal jurisdiction over defendant.  Plaintiff has not opposed Cohen's motion.  Under this court's local rules, a party's failure to respond to a properly filed motion can be construed as consent to the granting of that motion, and can provide a basis to grant the motion, so long as the court determines that the moving party has met its burden demonstrating facial entitlement to the relief requested.  *Duffin v. Wright*, 2010 WL 598675, at *2, n. 5 (N.D.N.Y. 2010) (citing N.D.N.Y.L.R. 7.1(b)(3)); *see also Maggette v. Dalsheim*, 709 F.2d 800,

802 (2d Cir. 1983) (holding that where the pleadings are sufficient to withstand dismissal, a failure to respond to a motion to dismiss cannot constitute "default" justifying dismissal of complaint).   Accordingly, the Court will address the merits of defendant's motion.

**A.     Failure to State a Claim - 12(b)(6)**

Generally, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted) (alteration in original) (citations omitted). The Court must accept the allegations of the complaint as true, and draw all reasonable inferences in favor of the nonmoving party. *See Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir.1998); *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir.1995). In addition, the Court may not dismiss the complaint unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Nettis v. Levitt*, 241 F.3d 186, 191 (2d Cir. 2001) (quotation omitted). Therefore, the issue before the Court on such a motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *King v. Simpson*, 189 F.3d 284, 287 (2d Cir.1999) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995)).

In order to survive a motion to dismiss on a § 1983 conspiracy claim, a plaintiff must allege: (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.

*Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir.2002).  A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.  *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983); *see also Cimabriello*, 292 F.3d at 325 (holding that the plaintiff must provide some details of time, place and the factual basis necessary to enable the defendants intelligently to prepare their defense).  To present a claim of conspiracy, a plaintiff must allege "an agreement among two or more persons . . . [with] substantial facts giving rise to an inference of a meeting of the minds of the alleged conspirators."  *Rodriguez v. Selsky*, 2003 WL 23018812, at *5 (S.D.N.Y. 2003) (citation omitted).  Further, in order to support a claim of conspiracy to commit a civil rights violation, a plaintiff must establish the existence of such a deprivation; a claim of conspiracy, standing alone, is insufficient to support a finding of liability under section 1983.  *Britt v. Garcia*, 457 F.3d 264, 269-70 (2d Cir. 2006);  *Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir.1993) (collecting cases).  Although *pro se* plaintiffs are entitled to liberal pleading standards, they "cannot completely avoid the pleading requirements of the Federal Rules of Civil Procedure."  *Peterson v. Tomaselli*, 2004 WL 2211651, at *12 (S.D.N.Y. 2004) (citations omitted).  "Thus, a *pro se* plaintiff must make 'an effort to provide some 'details of time and place and the alleged effect of the conspiracy' ".  *Id*. (quoting 2A Moore's Federal Practice ¶ 8.17 [6], at 8-109 to 8-110 (2d ed.1992)).

In the case at hand, plaintiff mentions Cohen only once in the complaint.  Plaintiff alleges that Cohen conspired with the Bureau of Prisons to prevent plaintiff from having a UDC hearing in a timely manner and further, that Cohen conspired with the Bureau of Prisons and defendant Crystal Kindall to have U.S. Marshals come to the Watkinson House and, "cart him off to jail

without a hearing" in violation of the Fifth Amendment.  Plaintiff's allegations are wholly conclusory and unsupported by any facts from which the Court could infer that Cohen and two or more defendants agreed to act to inflict an unconstitutional injury.  *See Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).  Plaintiff has not plead any facts to establish that a "meeting of the minds occurred".  The complaint is bereft of any date, place, time or details of any such meeting(s).  Indeed, plaintiff has not alleged that defendants had an "agreement" or sufficiently alleged facts that Cohen and Kindall even knew each other.  Cohen has asserted that she had no decision to remove plaintiff nor into any loss of good time.  Plaintiff has presented no evidence to contradict this assertion.  Moreover, plaintiff failed to allege any "plausible" reason why defendants would be motivated to conspire against him.  *See Brown v. Eagen*, 2009 WL 815724, at *13 (N.D.N.Y. 2009) (holding that the plaintiff does not need to provide detailed allegations but the complaint must be more than speculation); *see also Mortimer Excell v. Fischer*, 2009 WL 3111711, at *12 (N.D.N.Y. 2009) (holding that a conspiracy claim cannot be based solely on the plaintiff's own beliefs and conjectures).  Finally, plaintiff fails to allege a violation of a federally protected right.  Plaintiff merely alleges that he was  "carted away" from the Wilkinson House but fails to assert how any act by Cohen resulted in a violation of his constitutional rights.

To allow plaintiff to proceed with these vague allegations would essentially render prison officials "liable for conspiracy each time they performed their assigned duties".  *See Rodriguez*, 2003 WL 23018812, at *5 (citation omitted).  Plaintiff has failed to demonstrate an agreement or concerted action to violate a federally protected right.  Accordingly, plaintiff's conspiracy claim against Cohen is dismissed.

**B.       Lack of Personal Jurisdiction - 12(b)(2)**

11

It is well settled that, in both diversity and federal question cases, a district court looks to state law to determine in what manner and under what circumstances a party not present in the forum state can be subjected to the jurisdiction of a federal district court. *Barbera v. Smith*, 654 F.Supp. 386, 392 (S.D.N.Y. 1987) (citing *Marsh v. Kitchen*, 480 F.2d 1270, 1272 n. 6 (2d Cir.1973)). "When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir.1999). District courts resolving issues of personal jurisdiction must therefore engage in a two-part analysis. *Id*. First, they must determine whether there is jurisdiction over the defendant under the relevant forum state's laws. *Id*. Second, they must determine whether an exercise of jurisdiction under these laws is consistent with federal due process requirements. *Id*. Since there has been no discovery and no evidentiary hearing on jurisdiction, plaintiff need make only a prima facie showing that jurisdiction is proper. *See Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 196-97 (2d Cir. 1990). The Court must construe the pleadings and supporting affidavits in the light most favorable to plaintiff. *See PDK Labs v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997). Mere speculation and conjecture by plaintiff cannot provide a substitute for the averment of jurisdictional facts. *See Yellow Page Solutions, Inc. v. Bell Atl. Yellow Pages Co.*, 2001 WL 1468168, at *9 (S.D.N.Y. 2001).

Defendant contends that there is no basis for jurisdiction under any section of New York's long-arm statute. *See* N.Y. C.P.L.R. § 302(a).[10] Under New York law, the Court would have

---

[10] N.Y. C.P.L.R. § 302(a) provides:

Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his

personal jurisdiction over a non-domiciliary like Cohen only if the injuries of which plaintiff complains are substantially related to business that Cohen transacted in New York or were caused by tortious acts she committed in New York. *Nwanze v. Philip Morris Inc.*, 100 F.Supp.2d 215, 220 (S.D.N.Y. 2000) (citing N.Y. CPLR § 302(a)(1)-(2)) (citations omitted).

Personal jurisdiction under Section 302(a)(2) may also be predicated on acts taken by a co-conspirator within New York when the co-conspirator acts as "agent" for the absent party. *Allen ex rel. Allen v. Devine,* 670 F.Supp.2d 164, 171 (E.D.N.Y. 2009).  However, according to New York law, bland assertions of conspiracy are insufficient to establish jurisdiction for the purposes of § 302(a)(2).  *Lehigh Valley Indus., Inc. v. Birenbaum*, 527 F.2d 87, 94 (2d Cir. 1975). Plaintiff must make a prima facie showing of a conspiracy warranting an inference that the defendant was a member of the conspiracy for personal jurisdiction to extend to the defendant based on acts that were committed by her co-conspirators.  *Id.*; *see also First Capital Asset Mgmt, Inc. v. Brickellbush, Inc.*, 218 F.Supp.2d 369, 394 (S.D.N.Y. 2002).

---

executor or administrator, who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(I) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

4. owns, uses or possesses any real property situated within the state.

This Court has determined that plaintiff failed to allege any facts to support the inference that defendant was a party to any conspiracy and therefore, plaintiff cannot establish that defendant committed any tortious act in New York on behalf of that conspiracy. Other than the improperly pleaded conspiracy allegation, the complaint fails to allege any facts which might establish that Cohen either committed tortious acts in New York, or that the injuries of which plaintiff complains were related to business Cohen transacted in New York. *See Nwanze*, 100 F.Supp.2d at 220. Cohen alleges that all of her business relating to Wilkinson House occurs at the facility in Connecticut and that she resides and works in Connecticut. Cohen claims she never traveled to New York in furtherance of her duties with the Wilkinson House. Plaintiff has presented no facts to contradict Cohen's claims.

Accordingly, Cohen's motion for dismissal of plaintiff's complaint based upon lack of personal jurisdiction is granted.

**C.    Dismissal With or Without Prejudice**

This Court is dismissing the complaint as against defendant Cohen. However because the plaintiff is *pro se*, great liberality must be afforded to him, and the Court must decide whether to dismiss the claim with or without prejudice as against this defendant. The Second Circuit has held that when a court dismisses a *pro se* action on the pleadings, the plaintiff should be given the opportunity to amend at least once when the complaint gives "any indication" that a valid claim may be stated. *Frasier v. Gen. Elec. Co.,* 930 F.2d 1004, 1007 (2d Cir. 1991).

Thus, where a *pro se* complaint is deficient, the court should look closely to determine whether the facts alleged would support a different legal theory from that which plaintiff is claiming or should allow plaintiff to amend his complaint to plead missing elements. *Id.* at 1008.

14

Notwithstanding this liberality, plaintiff is not relieved the burden of alleging sufficient facts upon which a ***recognized*** legal claim could be based. *Lanaux v. Cent. New York Psychiatric Ctr.*, 1997 U.S. Dist. LEXIS 6133, *4-5 (N.D.N.Y. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)), *aff'd*, 1998 U.S. App. LEXIS 12614 (2d Cir. 1998), *cert. denied*, 525 U.S. 952 (1998). Although the decision whether to grant leave to amend is within the discretion of the district court, refusal to grant leave to amend must be based on a valid ground. *Brown v. Avstreith*, 1997 WL 100800, at *2 (S.D.N.Y. 1997) (citing *Oliver Sch. Inc. v. Foley*, 930 F.2d 248, 253 (2d Cir.1991)). Where the possibility exists that the defect can be cured and there is no prejudice to defendant, leave to amend at least once should normally be granted as a matter of course. *Id.*

Plaintiff does not oppose the motion, request jurisdictional discovery or move to amend the complaint. As written, the complaint does not state a claim because the Court simply cannot determine upon what facts the conspiracy was based. However, it is possible that plaintiff could amend his complaint to plead missing elements that would state a claim for conspiracy. Moreover, if plaintiff is able to plead facts sufficient to allege a cause of action for conspiracy, such allegations may form the basis for personal jurisdiction. Accordingly, the Court is compelled to grant plaintiff one opportunity to amend his complaint.

## II.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Ryan, Lucas, Gonyea, Fehlner, Schult, Kindall, Ryan and U.S. Federal Bureau of Prisons move for summary judgment arguing: (1) plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); (2) plaintiff's complaint fails to state a claim; and (3) defendants are entitled to qualified immunity.

15

**A.**    *Heck v. Humphrey*

In *Heck*, the Supreme Court held that in order to challenge the validity of a conviction or sentence in a section 1983 action, an inmate must demonstrate that the sentence or conviction has been reversed or invalidated by another tribunal or called into question by the issuance of a federal habeas corpus petition.  In *Edwards v. Balisok*, 520 U.S. 641, 646 (1997), the Supreme Court applied the *Heck* rule and held that a prisoner's claim that he was deprived of his due process rights at a disciplinary hearing necessarily constitutes a challenge to the validity of the hearing officer's determination and, therefore, necessarily implicates the penalty.  In *Jenkins v. Haubert*, 179 F.3d 19 (2d Cir. 1999), the Second Circuit held that *Edwards* does not apply to bar a § 1983 claim when a prisoner "alleges a constitutional violation arising out of imposition of intra-prison disciplinary sanctions that have no effect on the duration of the prisoner's overall confinement."  *Jenkins v. Haubert*, 179 F.3d 19, 21 (2d Cir. 1999).

In *Peralta v. Vasquez*, 467 F.3d 98 (2d Cir. 2006), the plaintiff claimed that the defendants violated his due process rights by denying him, "adequate assistance, witnesses and a fair and impartial hearing officer during a disciplinary hearing".  As a result of the hearing, plaintiff was sanctioned to five years loss of packages, commissary and telephone privileges and five years loss of good time credits.  *Id*. at 100.  The defendants moved for summary judgment relying on *Edwards* and arguing that the plaintiff could not prevail without first establishing that the hearing or resulting sanctions were invalidated. *Id*. at 101.  The plaintiff opposed the motion arguing that because he sought damages only for the sanctions affecting the conditions of his confinement and not for the loss of good-time credits, he could maintain his cause of action.  *Id*.  Therefore, the Court discussed the issue of whether and under what circumstances a prisoner may assert a

16

"mixed sanctions" case, one in which the plaintiff was sentenced to a period of loss of privileges in addition to the loss of good time, to challenge the conditions of confinement. *Peralta*, 467 F.3d at 104. The Second Circuit held:

> that a prisoner subject to such mixed sanctions can proceed separately, under § 1983, with a challenge to the sanctions affecting his conditions of confinement without satisfying the favorable termination rule, but that he can only do so if he is willing to forgo once and for all any challenge to any sanctions that affect the duration of his confinement. In other words, the prisoner must abandon, not just now, but also in any future proceeding, any claims he may have with respect to the duration of his confinement that arise out of the proceeding he is attacking in his current § 1983 suit.

*Peralta*, 467 F.3d at 104.

According to *Peralta*, a plaintiff must agree to waive all his potential claims with respect to the sanctions affecting the duration of his imprisonment arising out of the disciplinary proceeding he is challenging in order to proceed in a § 1983 action. *See Peralta*, 467 F.3d at 106. If such a waiver results, the Court must allow plaintiff to proceed with his challenge under § 1983 to the sanctions affecting his conditions of confinement.[11] *Id.*

Relying on *Peralta*, Courts in this district have discussed "mixed sanction" cases and challenges to conditions of confinement. *See Sheils v. Minogue*, 2009 WL 818958, at *4 (N.D.N.Y. 2009) (Sharpe, D.J.) (mixed sanction" punishment included a sentence of 12 months in SHU, loss of privileges and a reduction in good time credits affected both the conditions and duration of confinement); *see also Phelan v. Hersch*, 2010 WL 277064, at *4, n. 2 (N.D.N.Y. 2010) (Sharpe, D.J.) (holding that a sentence of confinement in SHU, loss of privileges and loss

---

[11] Defendants cite to the Second Circuit decision in *Archer v. Fischer*, 2009 WL 962287 (2d Cir. 2009) as support for summary judgment. However, the facts of *Archer* are distinguishable from the case herein. Notably, in *Archer*, the plaintiff sought to invalidate the DOC's decision to keep the plaintiff incarcerated past his conditional release date. *See Archer v. Fischer*, 07-CV-378 (GLS/DRH) (Dkt. No. 6).

of good time is a mixed sanction).

Defendants argue that plaintiff cannot recover damages because his relief implicates the validity of the disciplinary proceedings against him. Plaintiff claims that he is, "suing the defendants for the violation of Due Process rights in the process of the disciplinary hearing - not the decision". Plaintiff further avers, "I am not suing the defendants for loss of good time".

The Court notes that plaintiff argues that he is no longer a prisoner and therefore, his only recourse is a *Bivens* action as he is precluded from filing a request for habeas relief. In this matter, the Court takes judicial notice of the fact that plaintiff was released from FCI Ray Brook in December 2008. However, plaintiff is subject to supervisory release until 2016.[12] Plaintiff correctly notes that a prisoner who has been released from incarceration is forever barred from challenging the loss of good time. *Morales v. Woods*, 2008 WL 686801, at *5 (N.D.N.Y. 2008). However, a petitioner under supervised release may be considered "in custody" for the purpose of invoking federal habeas corpus review. *Scanio v. U.S.*, 37 F.3d 858, 860 (2d Cir. 1994). Thus, to the extent plaintiff is arguing that habeas relief is not available because he has been released from custody, plaintiff's argument lacks merit. However, the Court's inquiry does not end there.

Upon a review of the record, it is clear that plaintiff was subjected to "mixed sanctions" as a result of the various hearings. In June 2008, after a CDC hearing wherein it was determined that plaintiff violated a condition of his community program, DHO Renda sanctioned plaintiff and disallowed eight days of good conduct time, limited plaintiff's commissary privileges for three months, limited plaintiff's telephone privileges for two months and recommended a disciplinary

---

[12] The only information in the record with regard to plaintiff's release date is plaintiff's own affidavit wherein he asserts that he was, "released from federal custody" on December 5, 2008. According to Administrative Office of the U.S. Courts, Office of Probation and Pretrial Services, PACTS (Probation and Pretrial Services Automated Case Tracking System), plaintiff is serving a term of supervised release until 2016.

transfer from the RRC to secure custody. On October 10, 2008, the UDC agreed with DHO Renda's sanctions and referred the matter to DHO Ryan for a further hearing. On November 21, 2008, DHO Ryan sanctioned plaintiff to, "disallowance of 8 days of GCT and recommended a Disciplinary Transfer" to a more secure facility (FCI Ray Brook). The parties do not contend that the sanctions were invalidated.[13] Although *Heck* precludes plaintiff from challenging any sanction affecting the duration of his imprisonment, based upon *Edwards*, *Jenkins* and *Peralta*, plaintiff may proceed with a § 1983 challenge to the sanctions that affected the conditions of his confinement if he executes a proper waiver.

Thus, the district court must provide plaintiff with the option to "waive all claims relating to sanctions affecting the duration of his imprisonment in order to proceed with claims challenging the sanctions affecting the conditions of his confinement." *Phelan*, 2010 WL 277064, at *4 (holding that if the plaintiff is willing to forever forego a challenge to the loss of good time arising from the disciplinary hearing conducted by the defendant, he may proceed with his due process challenge to the SHU confinement and the loss of privileges arising from that hearing) (citing *McEachin v. Selsky*, 225 F. App'x 36, 37 (2d Cir. 2007)). The Court notes that in his affidavit/declaration in opposition to defendants' motion for summary judgment, plaintiff admitted that he was not challenging "good time credits", however, plaintiff must expressly acknowledge to the Court that he "agrees to forever abandon any and all claims he has with respect to the sanctions that affected the length of his imprisonment". *See Pacheco v. Crown*,

---

[13] DHO Ryan's sanctions did not include loss of commissary or telephone privileges. However, that decision was rendered on November 21, 2008, two months after plaintiff arrived at Ray Brook. The record does not indicate whether or not plaintiff was deprived of those privileges pending DHO Ryan's decision. Defendants have submitted evidence in support of the motion that from the SENTRY database confirming that plaintiff lost eight days of good conduct time.

2010 WL 144400, at *5 (N.D.N.Y. 2010). Accordingly, the Court must present this waiver option to plaintiff and ascertain whether he is willing to waive, once and for all, all claims relating to sanctions affecting the duration of his imprisonment in order to proceed with his claims affecting his conditions of confinement. See *Goston v. Potter*, 2009 WL 1161020, at *4 (N.D.N.Y. 2009).

Based upon the aforementioned, the Court takes no position on the merits of plaintiff's remaining claims and holds defendants' motion for summary judgment in abeyance at this time. If plaintiff chooses to waive his present and future due process claims challenging the loss of good time credits, the Court will allow plaintiff to proceed and the Court will rule on the merits of defendants' remaining arguments in the motion for summary judgment.

## CONCLUSION

**ORDERED** that defendant Cohen's motion to dismiss the complaint (Dkt. No. 15) is granted and the complaint is dismissed as against Cohen without prejudice; and it is further

**ORDERED** that plaintiff is afforded the opportunity to amend the complaint as against Cohen and that any such amended pleading must be filed and served **within thirty (30) days** of the filing date of this Order; and it is further

**ORDERED** that plaintiff shall advise the Court in writing, **within thirty (30) days** of the filing date of this Order, whether he:

> (1) waives for all times his present and any future due process claims challenging the loss of good time credits arising from the disciplinary hearing(s) conducted by defendants; or
>
> (2) chooses not to waive his due process claims challenging the loss

20

of good time credits arising from the disciplinary hearing(s); and it is

further

**ORDERED** that defendants Ryan, Lucas, Gonyea, Fehlner, Schult, Kindall, Ryan and U.S.

Federal Bureau of Prisons motion for summary judgment (Dkt. No. 19) is held in abeyance pending

the receipt of plaintiff's submission as set forth in this Order;

**ORDERED** that plaintiff's failure to file the required waiver statement within the

required time to constitute his refusal to waive these claims will result in dismissal of this action

without prejudice; and it is further

**ORDERED** that the referral to Magistrate Judge Homer continues in effect for the

remainder of the case; and it is further

**ORDERED** that Clerk serve a copy of this Decision and Order upon the parties by regular

or electronic mail.

**IT IS SO ORDERED.**

Date:    March 25, 2010

Norman A. Mordue
Chief United States District Court Judge